UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Gidget Bailey, Michelle Spindler,　　　　　　　　　　　　　　　Civil No. 03-3181 (DWF/SRN)
Florence Thurmer, Jeanette Vineski,
and Cheryl Polansky,

　　　　　　　　Plaintiffs,

v.　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**MEMORANDUM**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**OPINION AND ORDER**

Millennium Charity Plus, Inc., a Non-Profit
Corporation formerly known as
Little Canada Charity Plus; Jan Sherman; Joon
Kim; Patricia May Pillsbury;
Richard Pillsbury; Sadie Zibley;
Maggie Belde; Benjamin Belde; and
Linda Fahey, individuals,

　　　　　　　　Defendants.

---

Angela M. Ring, Esq., and Richard A. Williams, Jr., Esq., Williams & Iversen, counsel for Plaintiffs.

Huyen Le Phan, Esq., and Paul J. Zech, Esq., Felhaber Larson Fenlon & Vogt, PA - Minneapolis, counsel for Defendants.

---

## Introduction

　　The above-entitled matter came before the undersigned United States District Judge on July 29, 2005, pursuant to Defendants' Motion for Summary Judgment. Plaintiffs oppose the motion in all respects. For the reasons set forth below, Defendants' Motion for Summary Judgment is granted in part and denied in part.

**Background**

Millennium Charity Plus, Inc. ("Millennium"), is a charitable organization founded in 1979 for the purpose of funding charitable causes. The majority of Millennium's funds were raised through its bingo and pull-tab operations. Millennium ran its gambling operations four nights per week until May 20, 2005, when its gambling license was revoked. At all relevant times, Millennium was governed by a three-member board of directors consisting of Joon Kim, Chief Financial Officer; Jan Sherman, Gambling Manager; and Maggie Belde, Assistant Gambling Manager.

Millennium asserts that its membership consisted of thirty-five individuals who donated their time to Millennium. The members determined what charitable organizations Millennium would support and approved all of Millennium's expenditures. All of the individual defendants were members of Millennium.

Sherman and Belde were responsible for the day-to-day activities of the gambling operations. They prepared employee schedules one month in advance. For each bingo session, Millennium utilized bingo callers, floor clerks, pull-tab clerks, desk clerks, paymaster clerks, money room clerks, and admission clerks. Millennium paid its employees by the shift and their pay rate was determined by the position.

Belde initially worked as a floor clerk, but in 1996 she was promoted to the position of Assistant Gambling Manager. Defendants assert that Plaintiffs were unhappy with Belde's promotion and that Gidget Bailey refused to recognize Belde as her superior. In late 2001, Sherman announced her intention to retire and promote Belde to serve as Gambling Manager. Defendants assert that this strained the relationship between Belde and Bailey.

The relationship between Belde and Bailey further deteriorated in February 2002, when Belde reported to Sherman that Bailey had notified certain customers about the existence of winning tickets in certain pull-tab boxes. Belde contends that following that event, Bailey began to tell Millennium's employees that Belde and Randy Hegnar, Bailey's brother, were having an affair. Belde denies that she had an affair with Hegnar and asserts that she merely interacted with Hegnar more because she had hired Hegnar to renovate a house that she had purchased in 2002.

On April 28, 2002, Michelle Spindler contacted Sherman and requested a meeting to discuss several workplace issues. At the meeting, Plaintiffs raised a number of concerns with Sherman, including that: (1) Belde and Hegnar were behaving in an inappropriate manner in the workplace; and (2) Plaintiffs believed that they were being discriminated against on the basis of their gender. Plaintiffs also raised individual concerns. Cheryl Polansky complained that Hegnar was not doing his job. Florence Thurmer complained that Belde was not doing her job. Spindler complained that Hegnar was not turning in his paperwork on time. Jeanette Vineski complained that she was not receiving as many bingo calling shifts as she wanted. Bailey complained about the interactions between Belde and Hegnar. Bailey also told Sherman that Belde allegedly had given a box of pull tabs to a customer without requiring the customer to pay for it.

Plaintiffs contend that in response to their expressed concerns about gender discrimination, Sherman acknowledged that males were being given more favorable job assignments and work schedules. Plaintiffs assert that Sherman told Plaintiffs that she [Sherman] was going to do what was in the best interests of the charity. Plaintiffs allege that Sherman told them that she would take their concerns to Millennium's Board of Directors.

3

Sherman convened a meeting with Kim and Belde following her meeting with Plaintiffs. At that meeting, it was decided that Belde needed to be more visible at the bingo hall. Sherman also scheduled herself to work more night shifts so as to provide more oversight of the operation. After the meeting, Sherman advised Plaintiffs that their concerns had been taken to Millennium's Board of Directors.

Following the meetings, the tension between Belde, Bailey, and Hegnar increased. Belde and Hegnar contend that during one incident, Bailey approached Belde at the bingo hall, began to swear at her, and accused Belde of having an affair with Hegnar. Belde asserts that this type of behavior occurred so regularly that she discussed it with Sherman and Kim and the decision was made to drastically reduce Bailey's shifts. After Bailey's hours were reduced, Bailey accused Belde of distributing illegal football tip sheets.

Plaintiffs assert that after the April 2002 meeting, their hours were reduced. Therefore, Plaintiffs filed charges with the Equal Employment Opportunity Commission ("EEOC") on June 22, 2002. After the EEOC charge was filed, Plaintiffs assert that Defendants retaliated against Plaintiffs by further reducing their hours and assigning them to less desirable work stations.

On November 1, 2002, Sherman advised Thurmer that she was being removed from the pull-tab station and was being placed in the paymaster position. Sherman asserts the move was made because Thurmer had previously made mistakes by failing to collect money for pull-tabs that had been purchased and by redeeming a ticket that was later found to have belonged to another company. Sherman asserts that Thurmer walked out after being told of the move. Defendants contend that Thurmer did not show up for work during the entire month of November. When Thurmer contacted Millennium, she was told that Millennium had viewed her absences as a voluntary resignation.

Spindler was terminated on December 5, 2002. Millennium asserts that Spindler was terminated for missing eight shifts in November 2002. Spindler claims that she was treated unfairly and that other similarly situated employees who had not participated in the April 28, 2002, meeting did not have their employment terminated.

In December 2002, Millennium revised its policy manual to require employees to be available at least three night shifts per week and to prohibit employees from working at competing bingo halls. Defendants assert that this policy was instituted to provide management with more scheduling flexibility and to prevent Millennium employees from soliciting customers to competing bingo halls on the days that they worked at Millennium. Vineski and Bailey contend that at the time the policy was instituted, the policy only applied to them. After being warned about the new policy, Vineski and Bailey were fired for failing to comply with the policy.

On February 2, 2004, Kim pleaded guilty to misappropriating Millennium's funds. In October 2004, Sherman also pleaded guilty to misappropriating Millennium's funds. In May 2005, Millennium lost its gambling license.

## Discussion

### I. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not

as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

**II.     Gender Discrimination**

Plaintiffs assert that they were discriminated against on the basis of their gender in violation of Title VII of the Civil Rights Act and the Minnesota Human Rights Act ("MHRA"). In order to establish a *prima facie* case of discrimination based on gender, Plaintiffs must demonstrate that: (1) they were members of a protected group; (2) they were meeting the legitimate expectations of their employer; (3) they suffered an adverse employment action; and (4) similarly situated employees who were not members of the protected group were treated differently. *LaCroix v. Sears, Roebuck, and Co.,* 240 F.3d 688, 693 (8th Cir. 2001).

If Plaintiffs are able to establish a *prima facie* case, the burden shifts to Defendants to produce a legitimate, non-discriminatory reason for the adverse employment action. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If Defendants are able to articulate such a

reason, the burden shifts back to Plaintiffs to show that the proffered reason is merely a pretext for discrimination. *See id.* The elements and analysis of a discrimination claim under each of the statutes is the same. *Saulsberry v. St. Mary's Univ. of Minnesota,* 318 F.3d 862, 866 (8th Cir. 2003).

Plaintiffs set out several instances that they assert form the basis of their gender discrimination claims. Specifically, Plaintiffs assert that males were given more favorable job assignments and work schedules. Defendants contend that each of the Plaintiffs' claims fail as a matter of law due to Plaintiffs' inability to establish an adverse employment action.

### A. Thurmer

Based on her deposition testimony, it is questionable whether Thurmer even brought a gender discrimination claim. (Affidavit of H. Le Phan Aff. ("Phan Aff.") ¶ 2, Ex. E ("Thurmer Dep.") 146-147.) Nonetheless, the Court will consider the issue for the sake of clarifying the record. Thurmer alleges that Millennium's male employees were given more favorable job assignments and work schedules than its female employees. Defendants assert that Thurmer does not have a valid gender discrimination claim as Millennium always accommodated her requests to work exclusively as a pull-tab clerk and scheduled her based on her availability.

The Court finds that Thurmer has not presented a *prima facie* case of gender discrimination. Thurmer worked in her chosen position (pull-tab clerk) until she left Millennium. Thurmer also failed to provide the Court with any evidence that similarly situated male employees received more shifts than her as a pull-tab clerk. Accordingly, Millennium's Motion for Summary Judgment is granted as to Thurmer's gender discrimination claim.

### B. Bailey

Bailey's gender discrimination claim is based on her belief that Millennium's female employees did not receive as many shifts as its male employees. Specifically, Bailey contends that female employees who asked not to work certain dates were penalized, whereas male employees suffered no penalties for the same actions. Defendants, on the other hand, claim that Millennium's male and female employees received roughly the same number of shifts per employee.

The Court has reviewed Millennium's work schedules and finds little support for Bailey's contention that she received less shifts than her male counterparts. In fact, Millennium's records show that Bailey received more shifts than certain male employees of Millennium for a considerable period of time. Thus, Bailey has not presented evidence of an adverse employment action. Accordingly, the Court grants summary judgment as to Bailey's gender discrimination claim.

### C.     Polansky, Spindler, and Vineski

The gender discrimination claims brought by Polansky, Spindler, and Vineski are based on their belief that Millennium's male employees received more bingo calling shifts than Millennium's female employees. Defendants contend that Polansky worked exclusively as a caller and received as many calling shifts as Millennium's male employees. Defendants assert that Spindler did not want additional bingo calling shifts and that she was only interested in obtaining additional floor clerking shifts. Defendants also point to the fact that Vineski was assigned numerous calling shifts.

Defendants assert that they are entitled to summary judgment even if Polansky, Spindler, and Vineski presented *prima facie* cases of gender discrimination, because Millennium has articulated legitimate, non-discriminatory reasons for its employment decisions. Namely, that Spindler and Vineski were not given as many calling shifts as other employees because they were employed primarily as floor

clerks. Defendants also contend that Spindler and Vineski cannot show that Millennium's stated rationale for its employment decisions were merely pretextual.

After a review of the record, the Court finds that Polansky, Spindler, and Vineski have presented *prima facie* cases of gender discrimination. Defendants do not contest that Polansky, Spindler, and Vineski are part of a protected group or that they were meeting Millennium's legitimate employment expectations. Polansky, Spindler, and Vineski all contend that they were not provided as many calling positions as the Defendants provided to similarly situated male employees.

Defendants have presented legitimate, non-discriminatory reason for their employment decisions. However, Polanksy, Spindler, and Vineski have presented evidence that the employment decisions presented were merely pretext. Specifically, Polansky, Spindler, and Vineski assert that at the April 28, 2002, meeting, Sherman acknowledged that Millennium's male employees were given more bingo calling shifts than its female employees. In light of this information, the Court finds that Polansky, Spindler, and Vineski have presented sufficient evidence of pretext. Accordingly, summary judgment is not appropriate as to the gender discrimination claims of Polansky, Spindler, and Vineski.

### III.    Reprisal / Retaliation

Title VII makes it unlawful for an employee to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3 (a). Plaintiffs assert that Defendants retaliated against them for asserting their rights under Title VII and the MHRA.

To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the adverse employment action and the protected activity. *LaCroix,* 240 F.3d at 691. A defendant must present evidence of a legitimate, nondiscriminatory reason for its action to rebut the plaintiff's *prima facie* case. *Id.* The plaintiff must then show that the defendant's proffered reason was a pretext for retaliation. *Id.* An inference of a causal connection between a charge of discrimination and termination can be drawn from the timing of the two events, but generally more than a temporal connection is required to present a genuine factual issue of retaliation. *Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1136 (8th Cir. 1999).

### A.     Polansky

Polansky asserts that she was mistreated by Millennium management and ostracized in the workplace as a result of her participation in the April 28, 2002, meeting and the subsequent filing of the EEOC charge. Defendants contend that Polansky cannot make a *prima facie* showing of discrimination because none of the conditions of her employment changed as a result of her actions.

The Court finds that Polansky does not have a valid retaliation claim. The record is clear that Polansky worked as a bingo caller both before and after she participated in the protected activities. The record also shows that Polansky actually received an increase in the number of shifts she was scheduled to work following her participation in the protected activities. Polansky also remained employed with Millennium until Millennium's license was revoked. Based on the Court's finding that Polansky has not suffered an adverse employment action, the Court finds that Defendants' Motion for Summary Judgment as to Polansky's retaliation claim should be granted.

**B.     Thurmer, Spindler, Vineski, and Bailey**

Thurmer, Spindler, Vineski, and Bailey each make a number of common claims about Millennium's conduct, namely that after engaging in the protected activities, they received less shifts, and they were moved to less favorable positions.  In addition, Thurmer, Spindler, and Vineski claim that Millennium retaliated against them by demoting them or terminating their employment.  Defendants contest each of these allegations.  First, Defendants assert that every Millennium employee received fewer shifts as Millennium added staff and that the reduction in shifts went into place before the EEOC charge was filed.  Second, Defendants claim that Thurmer was moved to another position in the bingo hall after she made numerous mistakes that had a financial impact on Millennium's operations.  Third, Defendants assert Spindler and Vineski were terminated because they failed to comply with a legitimate workplace regulation.  Finally, Defendants contend that Bailey's hours were reduced because of her repeated clashes with Belde.

The Court finds that Thurmer, Spindler, Vineski, and Bailey have presented sufficient evidence of retaliation to survive summary judgment.  Defendants contend that the only protected activity engaged in by the Millennium employees was the filing of the EEOC charge.  The Court disagrees.  Plaintiffs raised gender discrimination concerns at the April 28, 2002, meeting with Sherman.  Defendants also attempt to use the May schedule to support their assertion that Plaintiffs' shifts were not reduced as a result of the April 28, 2002, meeting.  However, Plaintiffs have presented evidence that the May schedule had already been issued at the time the meeting took place.  Thus, Thurmer, Spindler, Vineski, and Bailey have all presented evidence that Defendants significantly reduced Plaintiffs' hours at the first opportunity to do so following the April 28, 2002, meeting.

Plaintiffs have also presented evidence that Millennium's actions in demoting Thurmer and in terminating Spindler and Vineski were retaliatory acts. Thurmer contends that she was demoted for actions that had been committed by other employees who had not had any action taken against them. Spindler and Vineski contend that their employment was terminated after Millennium put a policy in place that was only enforced against the two of them. The Court finds that Plaintiffs have presented evidence in support of their retaliation claims and that these claims, when considered in light of Plaintiffs' allegation that Millennium's management conspired to force out all those that had participated in the April 28, 2002, meeting and the filing of the EEOC charge, are sufficient evidence of pretext. Thus, summary judgment is not appropriate.

**IV.   Aiding and Abetting**

In the context of the MHRA, an aiding and abetting claim is established by showing that a defendant intentionally aided, abetted, incited, compelled, or coerced a person to engage in any of the practices set out in the MHRA. Minn. Stat. § 363A.14. In this case, Plaintiffs have alleged that all, or many, of Millennium's members participated in decision-making with regard to Millennium's gaming operations. Defendants contend that Millennium's members had no input or control over the terms and conditions of Plaintiffs' employment. Defendants also assert that Kim, Sherman, and Belde cannot be found liable for aiding Millennium because they serve on Millennium's Board of Directors.

The Court finds that all of the Defendants, with the exception of Millennium, Kim, Sherman, and Belde, should be dismissed from the case. All of the evidence in the record supports Defendants' assertion that Millennium's members did not have any input into the daily operations of Millennium. However, the Court finds that dismissing the aiding and abetting claim against Kim, Sherman, and Belde

12

would be inappropriate because they are alleged to have committed the wrongful acts in both their official and individual capacities.

## V.     Whistle-blower Claim

The Minnesota Whistle-blower Act provides that "an employee shall not . . . discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because: (a) the employee . . . in good faith, reports a violation or suspected violation of any federal or state law or rule adopted pursuant to law to an employer or to any government body or law enforcement official." Minn. Stat. § 181.931, subd. 1(a). Cases involving the Whistle-blower Act are analyzed under the *McDonnell-Douglas* burden shifting analysis. *Cokley v. City of Ostego,* 623 N.W.2d 625, 630 (Minn. Ct. App. 2001).

Bailey's whistle-blower claim is based on her allegation that she reported to Sherman that Belde had given a box of pull-tabs to a customer without requiring that the customer pay for the pull-tabs and that Belde had given passed some football tips to Hegnar. Defendants concede that the alleged conduct implicates a violation of the law; nonetheless, Defendants assert that Bailey's claim fails because Bailey's reports were not made in good faith pursuant to the statute.

The Court finds that Bailey has presented sufficient evidence of a whistle-blower claim such that it survives summary judgment. As previously mentioned, Defendants concede that Bailey's report implicated a violation of the law, but assert that Bailey did not report the alleged violations in good faith pursuant to the statute. Defendants base this assertion on language in Bailey's deposition testimony wherein she stated that she did not report these violations to the state gambling board, but instead provided the information only to Sherman.

The Court finds that in this case, the issue of whether Bailey reported the alleged violations in good faith and whether Defendants retaliated against her for doing so are fact issues that must be determined by a jury. Defendants are really claiming that Bailey reported these actions not to expose illegalities, but instead as part of her continued effort to cast aspersions on Belde and Hegnar and to ultimately have their employment terminated. The Court finds that these are credibility issues that must be left to a jury.

## VI.     Hostile Work Environment

Plaintiffs also assert that they faced a sexually hostile work environment. To succeed on a hostile work environment claim, Plaintiffs must prove three elements: (1) the harassment was based on sex; (2) the harassment affected a term, condition, or privilege of employment; and (3) that the employer knew or should have known of the harassment and failed to take proper remedial action. *Pedroza v. Cintas Corp. No. 2,* 397 F.3d 1063, 1068 (8th Cir. 2005). To alter the terms and conditions of one's employment, conduct must be severe and pervasive, both objectively and subjectively. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-23 (1993). When determining the severity and pervasiveness of an employer's conduct, several factors should be considered, including: the frequency of the discriminatory conduct; its severity; whether the conduct is physically threatening or humiliating or merely offensive; and whether the conduct unreasonably interferes with an employee's work performance. *See id*.

Plaintiffs assert that Defendants created a sexually hostile work environment. In support of this claim, Plaintiffs point to several instances where they believe that Belde and Hegnar acted in an inappropriate manner at the bingo hall. The Court finds that the conduct complained of by Plaintiffs

14

does not surpass the high threshold established in *Harris* for a hostile work environment claim. Most, if not all, of the instances complained of by Plaintiffs were not directed at Plaintiffs in any way and the remaining allegations do not rise to the requisite level required for hostile work environment claims. Thus, Plaintiffs' hostile work environment claims are dismissed with prejudice.

**Conclusion**

The parties will have to decide whether a settlement of this case in the context of the Court's decision will serve their best interests. Magistrate Judge Susan Richard Nelson is, of course, available to assist in negotiation of a settlement of the case if the parties so request. Magistrate Judge Susan Richard Nelson's Calendar Clerk, Beverly Riches, can be reached at 651-848-1200.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment (Doc. No. 49) is **GRANTED IN PART** and **DENIED IN PART**, as follows:

   a. Defendants' Motion for Summary Judgment as to the gender discrimination claims brought by Gidget Bailey and Florence Thurmer is **GRANTED.**

   b. Defendants' Motion for Summary Judgment as to the gender discrimination claims brought by Cheryl Polansky, Michelle Spindler, and Jeanette Vineski is **DENIED.**

   c. Defendants' Motion for Summary Judgment as to the retaliation claims brought by Cheryl Polansky is **GRANTED.**

      d.      Defendants' Motion for Summary Judgment as to the retaliation claims brought by Florence Thurmer, Gidget Bailey, Michelle Spindler, and Jeanette Vineski is **DENIED.**

      e.      Defendants' Motion for Summary Judgment as to the aiding and abetting claims is **GRANTED** as to Defendants, Patricia May Pillsbury, Richard Pillsbury, Sadie Zibley, Benjamin Belde, and Linda Fahey.

      f.      Defendants' Motion for Summary Judgment as to the aiding and abetting claims is **DENIED** as to Defendants Millennium Charity Plus, Inc., a Non-Profit Corporation formerly known as Little Canada Charity Plus, Jan Sherman, Joon Kim, and Maggie Belde.

      g.      Defendants' Motion for Summary Judgment as to the Whistle-blower Act claim brought by Gidget Bailey is **DENIED.**

      h.      Defendants' Motion for Summary Judgment as to the hostile work environment claim is **GRANTED.**

Dated: August 30, 2005          s/Donovan W. Frank
                                      DONOVAN W. FRANK
                                      Judge of United States District Court